69 So.2d 309 (1954)
ADAMS
v.
STATE ex rel. SUTTON.
Supreme Court of Florida. Special Division B.
January 5, 1954.
*310 Edwin C. Coffee, Jacksonville, for appellants.
E.M. Norton, Jacksonville, for appellee.
THOMAS, Justice.
This appeal was taken from a final judgment and peremptory writ of mandamus commanding the appellants to nominate the relator for the position of principal of one of the Duval County schools.
A superintendent who had recently been defeated in a spirited, if not acrimonious campaign, recommended the relator for the principalship and was asked by the appellants to recommend someone else. The superintendent failed or refused to comply with the request and at a subsequent meeting the appellants rejected the recommendation on the grounds that the relator was not qualified and had too violently opposed the candidate who was successful in unseating the superintendent who selected her for the place. It is significant that the request for a new recommendation was made three months before the trustees actually rejected the recommendation of the relator. As we shall now see there was no authority for the request until the superintendent's original recommendation had been formally disapproved. Armistead v. State ex rel. Smyth, Fla., 41 So.2d 879.
Under Sections 230.33(7) (c), 230.43(1), Florida Statutes 1951, and F.S.A., the superintendent is required to submit to the trustees of a school district his recommendation of a person to serve as principal of the district school and the trustees are duty bound to consider such a recommendation and to make a nomination for the position to the county board. A recommendation submitted by the superintendent "may be rejected only for good cause * * *." When there is a disapproval of such a recommendation "a second and if necessary a third recommendation * * * shall be requested * * *." Sec. 231.35, Florida Statutes 1951, and F.S.A.
We will dispose of the first objection by simply stating that the record abundantly supports the view of the circuit judge that lack of qualification of the relator was not substantiated, therefore no "good cause" had been shown for rejection of the recommendation on that ground.
The second ground, that is the political activity of the relator, seems to be the one more deserving of consideration and discussion by this court.
According to the return to the alternative writ the relator was, during the election of a superintendent in 1952, active in the dissemination of literature which reflected on the character of the victorious candidate who is now serving as Superintendent of Public Instruction. The appellants took the position that the attacks sponsored by a committee of which relator was a member were so intemperate that in appellants' opinion, the functioning of the schools would be impaired by placing her in the position of principal in the system supervised by the present superintendent and that in this situation they were *311 justified in disapproving the recommendation.
The problem is a delicate one because the equilibrium of the school system should not be disturbed by an inordinate participation in political campaigns, particularly those for the election of school officials, and, on the other hand, the members of the profession should not be throttled in voicing their preference in such contests. We are also concerned with the precedent that might be set were it to appear, even, that teachers on the losing side were penalized for their efforts while those on the winning side were rewarded. Surely there could be no blending of the school and spoils systems.
There is no hint in this record that the appellants were actuated by any motive but to protect and improve the functioning of the school in their district but the danger of a ruling too strenuously curtailing the participation of teachers in school elections is lurking in this controversy, nonetheless. Ignoring any thought that the relator may have been rewarded by the old superintendent or punished at the behest of the new one, we will determine by the application of governing law whether relator's part in the election of 1952 furnished a justification for refusal of her recommendation on the theory that the ill feeling engendered between the successful candidate and one of the followers of her adversary reached such a degree of intensity that cooperation was rendered unfeasible.
The only law cited to us carrying a restriction of teachers' participation in politics is the Teachers Tenure Act, Chapter 21197, Laws of Florida, Special Acts of 1941, which provides in Section 11: "Teachers are expressly prohibited from engaging in any political activity during the regular school hours of any school day." (Italics supplied.) The circuit judge recited that there was conflicting evidence about the relator's taking part in the distribution of "violent and scurrilous literature" in the campaign but he declared "There was no evidence by either side that the political activities of [relator] occurred during school hours."
We agree with the circuit judge in his disposition of this controversy. Inasmuch as none of relator's energies in behalf of her candidate were expended during school hours, there was no violation by her of any provision of law peculiar to the political activities of school teachers. So it is clear to us as it was to the circuit judge that school teachers may engage in political campaigns precisely as other persons may so long as they confine their activities to periods that do not fall in "school hours of any school day"; that there is no ground for disciplining them as school teachers so long as they observe the inhibition of the act we have quoted. For transgressions of election laws generally they would, of course, fall in the same category as persons not members of their profession.
We subscribe to what the circuit judge held with reference to the charge that the position of the newly elected superintendent would be "undermined, weakened and made less effective if [relator] should be appointed as principal of a district school." This apprehension is necessarily speculative as it is based on the premise that the ill feeling generated in the campaign might result in the relator's being disloyal to the person whom she sought to defeat. If the relator proves insubordinate, inefficient or incompetent she may be dismissed regardless of the reason for her misdeeds or her unfitness, but there is no logical reason now to determine that because of animosity growing out of the election the relator will inevitably be so recalcitrant that she should be excluded from a position of authority.
As we have already written, we fear an endorsement of such a principle would set a precedent that would itself be dangerous to the efficiency of the school system. We must conclude that the circuit judge was correct when he held that the *312 relator was not "rejected for good cause." Section 231.35, supra.
Affirmed.
ROBERTS, C.J., DREW, J., and LOPEZ, Associate Justice, concur.