THOMAS, Justice.
Roscoe C. Wilder secured an alternative writ of mandamus against .the Trustees of School District No. 1, Duyal County., It was recited in the writ that the relator represented that sometime before 27 August 1952, the County Superintendent of Public Instruction, in accordance with the provisions of Sec. 230.35(7) (c), Florida Statutes 1951, and F.S,A., had submitted the relator’s name to the .trustees and recommended him for the position of principal of Ruth N. Upson School, whereupon it became the duty of the trustees to consider the recommendation and to nominate the relator for appointment to the post by the Board of Public Instruction, unless the recommendation should be rejected for good cause. Secs. 230.43(1) and 231.35, Florida Statutes 1951, and F.S.A. It was further recited that the relator charged that the trustees disregarded these laws by arbitrarily and capriciously rejecting the recommendation and refusing to nominate the relator to the Board, that no “good cause” was shown for the action and that the relator was willing, qualified and able to perform the duties of the principalship to which the superintendent had recommended him.
*66 In their return, the appellees admitted that the recommendation of the relator by the superintendent had been submitted during August, 1952, and stated that they duly considered the recommendation and rejected it for causes which to them appeared good and sufficient.
We now digest these “causes”, which, according to their return, the trustees thought justified their action. The relator during the primary elections of 1952 belonged to a teachers’ committee which was organized to advance the candidacy of W. Daniel Boyd to succeed himself as superintendent. The committee published advertisements reflecting on the character of the eventually successful candidate, Iva T. Sprinkle, and the relator personally disseminated the advertising matter. The attacks were so intemperate that in the opinion of the trustees, the operation of the schools by Boyd’s successor would be “undermined and weakened * * * by the nomination of relator * * * and that it was to the best interests of the school system, of the patrons of the schools and of the children for the administration of the present County Superintendent not to be hampered with a principal who had recorded himself as having such a violent and disrespectful attitude toward the said County Superintendent.” The trustees were informed and “verily” believed that the recommendation of the relator was a reward by the then superintendent for the relator’s services in the campaign, and that the relator had engaged in political activities by dismissing his classes at an early hour so they might hear the then county superintendent speak in behalf of his candidacy and by soliciting campaign funds from members of his classes to' promote the superintendent’s candidacy. Also the trustees charged that the relator while acting as principal of Brentwood Elementary School was absent for excessive and unreasonable periods.
After testimony had been taken at considerable length and weighed by the circuit judge, he entered a judgment quashing the alternative writ. He construed the return as presenting four grounds of good cause for declining the recommendation: “(1) that Petitioner was a member of ‘The Teachers Committee’, an organization which was active in the Democratic Primaries of 1952 on behalf of the former superintendent, Boyd, and which published political advertisements derogatory to the present superintendent, Mrs. Sprinkle, and which political material reflected on the character, reputation, integrity and ability of Mrs. Sprinkle; (2) that, contrary to the provisions of the Teacher Tenure Act for Duval County, Petitioner, while acting as a teacher in the Adult Night School, did during such school hours, engage in political activities in support of the former superintendent, Boyd; (3) that he further participated in political activities during school hours by distributing packages of political literature to other teachers in the Brentwood Elementary School and also received political literature during regular school hours; and (4) that, during the period of time from January to June 1952, while acting as principal of the Brentwood School, Petitioner was absent from said school on numerous occasions and that such absences were excessive, unreasonable, and prevented the full discharge of his duties.”
He found that no effort had been made to support the charge that the relator had been a member of a teachers’ committee designed to further the candidacy of Boyd and that no “substantial effort’’ had been made to prove that the relator distributed political literature, so the first and third grounds in his analysis were eliminated as bases for his judgment. The judge reached the conclusion that the “good cause” necessary to rejection by the trustees of a recommendation for a principalship by the superintendent consisted in the relator’s attending political rallies during night school and permitting his classes to do so. Such, thought the judge, amounted to “ ‘engaging in * * * political activity during the regular school hours of any school day.’ ” Sec. 11, Chapter 21197, Laws of Florida, Special Acts of 1941. Also the judge thought the relator had been absent for excessive periods from Brentwood Elementary School. *67 This conduct, too, in his opinion amounted to good cause.
A very serious question arises whether the night school was such a school as the legislature had in mind when it prohibited participation in political activities during school hours on school days. The school was conducted at night from six-fifteen to nine-thirty or nine-forty. >Men as old as fifty-odd attended the classes. The students were all former service-men and were afforded the advantages of the school without cost under the "G.I. Bill of Rights.” Any student who was not a former member of the armed forces could attend but if he did, would have to pay tuition. The cost of the school was borne entirely by the United States Government. The salaries of the teachers were paid by the Government. Such a school, in our opinion, hardly resembles the ones the legislature had in mind when it enacted Chapter 21197, supra.
Even were it assumed that the school was one that came under the provisions of the Act, the testimony taken as a whole failed to establish that the relator participated in politics for he seems to have done no more than listen to candidates speak and permit his classes of the night school to do that. The testimony that the relator was absent from the Brentwood School for periods that were so excessive and unreasonable as to interfere with his duties does not support the charge when considered either alone or with the testimony relevant to the other charges, and we reach this conclusion without undertaking independently to reconcile any conflicts. Furthermore, such charges, both with reference to political activity during night school sessions and absences, bear all the earmarks of having been afterthoughts. Witnesses to the absences of the relator and his supposed political activity during night school hours testified that they first made known the information they had after this contest developed so the trustees could not have had the information when they rejected the recommendation.
We think a true picture of the entire controversy may be formed from the story given by Mr. Elliott Adams, a respected member of the Bar of this Court, chairman of the Board of Trustees, adversary of the relator and therefore a witness hostile to the relator’s cause, and the only trustee to testify.
A spirited, if not violent, contest developed in the primary of 1952 between W. Daniel Boyd, incumbent superintendent, and Iva T..Sprinkle. We referred to the race in Adams v. State ex rel. Sutton, Fla., 69 So.2d 309. Much ill feeling was generated between the superintendent and his adherents and his successful opponent and her followers.
On 27 August of that year the superintendent recommended the relator for nomination as principal of Ruth N. Upson School. About that, time, shortly after according to Mr. Adams, shortly before according to Mrs. Sprinkle, Mrs. Sprinkle conferred with Mr. Adams about the relator’s “acceptability” as- principal “in this system.” The word “acceptability” will become more significant as we proceed for it seems to overshadow the matter of relator’s qualification.
It is important here to emphasize that Mrs. Sprinkle was now approaching a trustee about the “acceptability” of a man whom the then superintendent was fully empowered to recommend, and nearly five months before Mrs. Sprinkle was to assume her duties, if elected. Returning to Mr. Adams, we quote his statement: “Mrs. Sprinkle reported to Mr. Horton and to me that Mr. Wilder had been exceedingly active in his campaign for Mr. Boyd in seeking renomination and that his activities were obnoxious to her and that she did not think that she could work with him as a principal if she should be elected Superintendent.” Mr. Adams was then asked if this attitude on the part of Mrs. Sprinkle was “one of the factors considered by the trustees in rejecting Mr. Wilder’s name” and he said it was. Mr. Adams was asked what “was the basis for that rejection by the trustees?” He replied: “Mr. Wilder’s *68 unethical political activities which made him obnoxious, to Mrs. Sprinkle and which, in the opinion of the trustees, impaired his efficiency as a principal and as a member of the supervisory staff of the Board of. Public Instruction.”
The witness admitted that he made the following’ statement, “or substantially so,” at a meeting of the trustees 31 December 1952.
“It has been brought to my attention that a number of political advertisements were made and published over the signature of Mollie Peterman, Chairman'of the Teachers’ Committee, among other things these advertisements said that over eighteen hundred teachers cannot be expected to accept a woman as a principal who has never lifted her -voice in their behalf, these advertisements reflected on Mrs. Sprinkle personally, and Mrs. Sprinkle has stated to me that those teachers who took such a violent stand in opposition to her were not suitable as a principal in a school, and they would not be acceptable to her personally and that she could not work with them, and it was her stated desire that they not be nominated,”
He further admitted that after this statement, he made the following motion:
• “Based on this information, I believe that the nominations of Roscoe Wilder for the- Ruth N. Upson School, Miss Mollie Peterman for Panama Park, Mrs: Mayme Sutton 'for the Annie Beaman School, would not be for the best’ interests of the schools, and I move that the trustees decline to accept the nominations, and that the Superintendent be requested to submit another list.”
The relator’s experience in the school system -emphasizes -the fact that he was not recommended • because he wouldi be “obnoxious” to the incoming superintendent.. He had been connected with various school systems of the State since 1932 and with the schools of Duval County since 1949. He was principal of a combined elementary and junior high school in Taylor County for four years. He served in that capacity in Lafayette County for three years, and for a year and a half as principal of a combined junior-senior high school at Perry. He then went to Duval County where he taught in John Gorrie Junior High School until February 1952, when he was asked to assume the duties of principal of Brentwood Elementary School for the purpose of relieving Mrs. Sprinkle who had been gpven a leave of absence to enter the race for superintendent. He , holds , a scholastic degree of Bachelor of Arts in Education conferred by Florida State College for Women, now Florida State University, and the degree of Master of Education granted him by the University of Florida.
In Adams v. State ex rel. Sutton, supra, we expressed the fear that even an appearance of punishment or reward of teachers accordingly as they chose the successful or unsuccessful candidate in a contest for the office of superintendent might impair the school system. The same danger inheres in this case.
From our study of the record, we are convinced that too much emphasis was placed on the obrioxiousness of the relator to the incoming superintendent and too little on his qualifications for the position for which he 'had been recommended by the outgoing superintendent, and that it could not be logically inferred that because of the relator’s political interest he would not work for the good of the schools in Duval County. The inference that such would be his attitude and his conduct did not constitute “good cause.”
The judgment is
Reversed.
ROBERTS, C. J., and HOBSON and DREW, JJ., concur.